**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glacier Pool Coolers LLC, et al., | No. CV-15-02338-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Cooling Tower System Incorporated, | |
| Defendant. | |

Before the Court is Plaintiffs Glacier Pool Coolers LLC and RAM Innovations LLC's (collectively Glacier) Motion for Leave to Amend Complaint and Request to Set Scheduling Conference, (Doc. 31), and Defendant Cooling Tower System Inc.'s (CTS) Cross-Motion for Leave to Amend Answer and Counterclaim, (Doc. 32). Glacier has also filed a motion to continue deadlines. (Doc. 37.) For the following reasons, Glacier's motion to amend is granted, CTS' motion to amend is denied, and Glacier's motion to continue deadlines is denied.

## BACKGROUND

In November 2015, Glacier filed suit against CTS alleging, *inter alia*, patent infringement, common law unfair competition, and breach of contract/request to compel arbitration arising out of CTS' sale of pool cooling devices. (Doc. 1.) The patent at issue involves a special method of installing the pool coolers ('589 Patent). (*Id.*, ¶ 1.) In January 2016, CTS answered the complaint and alleged a counterclaim for breach of

contract. (Doc. 16.) During discovery, Glacier learned that CTS had not sold any pool coolers, and that on April 28, 2016, CTS took down the website on which the allegedly infringing pool coolers had been advertised. Consequently, Glacier sought leave to dismiss the patent infringement claim and add a claim for intentional interference with a contract. (Doc. 31.) CTS opposed the motion and moved to amend its counterclaim to add a claim for a declaratory judgment of non-infringement. (Doc. 32.) In response, Glacier covenanted not to sue CTS "with respect to any of CTS's alleged past or present infringement with respect to [the '589 Patent]." (Doc. 36 at 7.)

On June 22, 2016, CTS sold a pool cooler. (Doc. 39-1.) The Court ordered Glacier to file a sur-reply to address whether the sale of a pool cooler, without instructions regarding the patented method of installation, constituted infringement. (Doc. 45.) In response, Glacier stated that the sale did not infringe on its patent given that CTS did not include instructions regarding the patented method of installation. (Doc. 46 at 2.)

## **MOTIONS TO AMEND**

**I. Legal Standard**

The scheduling order entered in this matter set the deadline for amending pleadings for March 31, 2016. The deadline has passed, and thus Fed. R. Civ. P 16(b) requires that the parties demonstrate good cause to amend their respective pleadings. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) ("Once the district court had filed a pretrial scheduling order pursuant to [Rule 16,] which established a timetable for amending pleadings[,] that rule's standards controlled."). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. The Court may consider the following factors in determining whether to grant a motion to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether [the party] has previously

amended [the] complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

**II. Glacier's Motion**

CTS does not oppose Glacier's request to dismiss its patent infringement and unfair competition claims. As such, Glacier's motion is granted in that respect. Regarding Glacier's request to include an intentional interference with contractual relations claim, CTS argues that Glacier fails to demonstrate good cause because "the facts giving rise to the amendments were known when the complaint was originally filed." (Doc. 32 at 2.) CTS also argues that the claim is futile because it is speculative and barred by the economic loss doctrine. The Court disagrees.[1]

In the amended complaint, Glacier alleges the following:

> Since April 2015, CTS has supplied several Glacier pool coolers to Glacier customers. Upon information and belief, CTS has intentionally and with an evil mind provided Glacier's customers with substandard and deficient pool coolers. In at least once instance, CTS shipped a pool cooler directly to a Glacier customer that had an exposed wire. When the pool cooler was installed, the exposed wire caused the installer to be shocked. . . . When CTS was alerted to this issue, CTS accepted the return of the pool cooler and shipped a replacement pool cooler directly to the customer. The replacement pool cooler was clearly damaged. At least three pool coolers that CTS shipped directly to Glacier customers have been damaged when received by the customer. . . . The conduct described in the above paragraphs caused Glacier to loss [sic] at least one significant customer, SCP Distributors LLC. As Glacier's supplier, CTS had knowledge of Glacier's contractual relationship with SCP Distributors LLC. SCP Distributors LLC has refused to do business with Glacier since SCP Distributors LLC received the pool coolers described above. Upon information and belief, these pool coolers were intentionally damaged by CTS in order to cause Plaintiffs to lose customers, like SCP Distributors LLC.

---

[1] There is no evidence that Glacier delayed in raising this claim. Although the underlying facts may have been known to Glacier when it filed the original complaint, it was not until after discovery that it learned CTS was not infringing the '589 Patent, and thus its unfair competition claim was unnecessary. As such, CTS' argument is unpersuasive.

1  (Doc. 31-1 at 15-16.)  These allegations plausibly allege the elements of a claim for intentional interference with contractual relations.  *See Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041 (Ariz. 1985) (elements of claim include:  "(1) [t]he existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted").  In addition, contrary to CTS' argument, the intent element is not based on pure speculation.  Glacier alleges that faulty pool coolers were sent to the same customer three times, which resulted in the customer ceasing to do business with Glacier.  This is sufficient to plausibly allege that CTS intended to damage Glacier's relationship with SCP Distributors LLC.

CTS also argues the claim is barred by the economic loss doctrine.  The economic loss doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage."  *Carstens v. City of Phx.*, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003).  In other words, damages may not be recovered if the claim alleges "only economic damages resulting from an alleged breach of contract."  *S.W. Pet Prod., Inc. v. Koch Indus., Inc.*, 89 F. Supp. 2d 1115, 1126 (D. Ariz. 2000).  The doctrine, however, has rarely, if ever, been applied outside the product liability and construction defect contexts, *see Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010), and CTS has failed to persuade the Court that it should apply to this case.  As such, Glacier may amend its complaint to include a claim for tortious interference with business relations.

**III.  CTS' Motion**

Notwithstanding Glacier's voluntary dismissal of its patent claims, CTS argues that it should be permitted to amend it counter-complaint to include a declaratory claim of non-infringement of the '589 Patent. (Doc. 32 at 9.)  It asserts that Glacier continues to threaten an infringement action if CTS sells pool coolers.  (*Id.*)  In its reply brief,

Glacier stated: "Plaintiffs hereby unequivocally covenant not to sue CTS with respect to any of CTS's alleged past or present infringement with respect to [the '589 Patent." (Doc. 36 at 7.) Glacier asserts that this covenant divests the Court of subject matter jurisdiction over CTS' proposed declaratory judgment claim. Furthermore, even after CTS sold a pool cooler, Glacier stated that such a sale did not infringe on the '589 Patent, nor would any sales that do not include instructions regarding use of the patented method of installation. (Doc. 46 at 2.) If CTS does not include instructions for the '589 Patent, and if Glacier agrees that a sale of a pool cooler without instructions regarding the method of installation does not infringe on the '589 Patent, the issue becomes whether CTS' proposed claim involves an actual controversy for the Court to resolve. The Court finds that it does not.

Under the Declaratory Judgment Act, federal courts are permitted to "declare the rights and other legal relations of any interested party," so long as there is "a case of actual controversy." 28 U.S.C. § 2201. In determining jurisdiction over a declaratory judgment claim of non-infringement in the patent context, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "[W]hen it is unclear when any even arguably infringing activity will occur, a dispute will lack the immediacy necessary to support the exercise of declaratory judgment jurisdiction." *Matthews Intern. Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1329-1330 (Fed. Cir. 2012).

*True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093 (D. Ariz. 2005) is instructive. In that case, the court found that a covenant not to sue for past or present acts that infringed on a patent divested the court of subject matter jurisdiction over a declaratory judgment claim for non-infringement. The plaintiff, True Center, brought a declaratory judgment action of non-infringement of two patents held by the

1   defendant, K-Zell. *Id.* at 1095.  Before trial, K-Zell "covenant[ed] not to sue True Center
2   or its customers for infringement of the [two patents] arising out of any products or acts
3   existing on or before November 1, 2005." *Id.*  Noting other Federal Circuit decisions
4   holding that such a covenant divested the court of subject matter jurisdiction, the court
5   concluded that the covenant "eliminate[d] any reasonable apprehension True Center
6   might have of an imminent infringement suit." *Id.* at 1097.  In addition, because "[a]
7   lawsuit based on future activity is, of course, not based on 'present activity,' . . . the fear
8   of such a suit" is too speculative to justify jurisdiction over the claim. *Id.*[2]

9   Glacier states that a "sale only infringes if CTS induces infringement of the
10  method for pool cooling set forth in the Patent."  (Doc. 36 at 9.)  CTS states that it
11  "supplies no pool cooling installation instructions at all" with the pool coolers.  (Doc. 32
12  at 8.)  At present, there is nothing to suggest CTS is infringing on the '589 Patent, nor is
13  Glacier threatening suit.  And Glacier conceded that CTS' recent sale of a pool cooler
14  does not infringe on the patent.  Like *True Center*, Glacier's covenant undermines any
15  reasonable apprehension on the part of CTS that it faces an infringement suit by selling
16  the pool coolers without instructions regarding the '589 Patent.  Furthermore, CTS' fear
17  of an infringement suit arising out of future infringement "is not sufficient to invoke the
18  Court's declaratory judgment jurisdiction." *True Ctr.*, 402 F. Supp. 2d at 1097; *see also*
19  *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2007) (finding
20  the dispute lacked sufficient immediacy to support jurisdiction because it was uncertain
21  as to when the declaratory plaintiff would engage in a potentially infringing activity).  As
22  such, the CTS may not amend its counter-complaint to add a claim for declaratory
23  judgment of non-infringement.

---

[2] *True Center* employed the two part test set forth in *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1005), which was partially overruled by *MedImmune* in 2007.  Nevertheless, the case is sufficiently analogous to the facts of this case, and thus the Court considers it persuasive authority.  Moreover, *Super Sack* has "not been overruled to the extent that it established that a covenant not to sue in the future for products made, used, or sold in the past removes actual controversy in the present." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

CTS relies on *Revolution Eyewear*, which found that a covenant not to sue was inadequate to divest the court of subject matter jurisdiction over a declaratory judgment claim of non-infringement because it did not include future sales of infringing products. 556 F.3d at 1300. But *Revolution* involved a key distinction: the defendant unequivocally stated that it intended to market and sell the allegedly infringing product, and the plaintiff's "covenant did not extend to future sales of the sale product as was previously sold." *Id.* at 1298. Here, Glacier states that sales of pool coolers do not infringe on the '589 Patent. Implicit within Glacier's covenant is the notion that it will not sue CTS for merely selling pool coolers. Only if it is discovered that CTS is selling pool coolers *and* inducing infringement, say, by providing instructions on the patented method of installation, will Glacier file suit. CTS has no stated present intention to do this, and thus *Revolution Eyewear* is distinguishable from this case.[3]

## IV. Conclusion

In sum, the Court concludes that Glacier has shown good cause to amend the complaint with respect to the claim for intentional interference with contractual relations. In addition, given Glacier's covenant not to sue, CTS' motion to amend its counter-complaint to include a declaratory judgment claim of non-infringement is denied.

## MOTION TO EXTEND DEADLINES

Glacier moves to continue several deadlines related to its patent claims pending resolution of the motions to amend. (Doc. 37.) Because the parties stipulated to extending some of the deadlines, (Doc. 40), and because the Court will set a scheduling conference by separate order to deal with these matters, the motion is denied as moot.

**IT IS ORDERED** that Plaintiffs' motion for leave to amend complaint, (Doc. 31), is **GRANTED**, Defendant's motion to amend, (Doc. 32), is **DENIED**, and Plaintiffs' motion to extend deadlines, (Doc. 37), is **DENIED**. Plaintiffs must file the Amended

---

[3] CTS also relies on *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) for the proposition that the covenant must cover all future acts. But *Already* does not say this—it merely found that the comprehensive covenant was sufficient to divest the Court of subject matter jurisdiction over a declaratory judgment counter-claim for non-infringement. *Id.* at 728, 732.

- 7 -

Complaint within 7 days of the date of this Order. The Court will set a scheduling conference by separate order.

Dated this 27th day of July, 2016.

Douglas L. Rayes
United States District Judge